UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 14-62876-CIV-COHN/SELTZER

RYAN CERVENEC,

        Plaintiff,

v.

BORDEN DAIRY COMPANY
OF FLORIDA, LLC,

        Defendant.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## (WITH INCORPORATED MEMORANDUM OF LAW)

Defendant Borden Dairy Company of Florida, LLC ("Borden" or the "Company"), pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L.R. 7.5, hereby moves for summary judgment on all of Plaintiff's claims (the "Motion").

**I.**    **Background and Summary of the Argument[1]**

    **A.**    **Background**

Plaintiff in this case, Ryan Cervenec ("Cervenec"), is a former Route Supervisor for Borden at its Miami location, whose position was eliminated by Borden in August 2011, which resulted in the termination of his employment on August 31, 2011. Although Cervenec, in his response to this Motion, will attempt to make this case as complex as possible to avoid summary

---

[1] Pursuant to S.D. Fla. L.R. 7.5, Borden is simultaneously filing a separate *Statement of Undisputed Material Facts* in support of this Motion. The Statement contains an appendix of pertinent exhibits. References to "SMF" in this Memorandum are to the separately numbered paragraphs of the *Statement of Undisputed Material Facts* or its exhibits.

judgment, the relevant and undisputed facts of this case and applicable law are incredibly straightforward and simple.

Cervenec makes six (6) claims in his Complaint, three (3) under both the federal Americans With Disabilities Act ("ADA") and the Florida Civil Rights Act ("FCRA").  Because claims under the FCRA are analyzed the same as claims under the ADA[2], for analysis purposes, there are only three (3) claims: (i) Borden failed to accommodate Cervenec's alleged disability; (ii) Borden terminated Cervenec's employment because of his alleged disability; and (iii) Borden terminated Cervenec in retaliation for his requesting an accommodating more than six (6) months prior to his termination.  As we explain below, the record facts and law in this case require that each of Cervenec's claims be dismissed on summary judgment.

As a Route Supervisor, Cervenec supervised Route Sales Representatives, who drive commercial vehicles[3] and deliver milk products.  (SMF ¶¶1-2, 20-22)  The Borden Route Supervisor job description states expressly that essential functions of that job include: (i) possessing a valid Class "A" Commercial Driver's License ("CDL"); and (ii) that the Route Supervisor be physically able to perform all the duties of a Route Driver, meaning the ability to drive a commercial vehicle.  (SMF ¶22) With the exception of Cervenec, every Route Supervisor who worked with Cervenec and every former manager with responsibility over Route Supervisors testified that driving a commercial vehicle is an indispensable function of the Route Supervisor position. (SMF ¶¶23-24, 28)[4]

---

[2] Disability discrimination claims raised under the FCRA are analyzed under the same framework as the ADA. *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263–64 (11th Cir.2007)

[3] In this Motion, the term "commercial vehicle" refers to a vehicle in excess of 10,000 pounds that requires, at minimum, a valid Department of Transportation ("DOT") Medical Certificate in order to operate.

[4] Borden's own Driver Logs from the time at issue show that Cervenec, contrary to his testimony, regularly drove a commercial vehicle as a Route Supervisor, as did the other Route Supervisors at the Miami location. (SMF ¶¶26-27)

In April 2010, Cervenec was diagnosed with a brain tumor.  Cervenec took Family and Medical Leave Act leave ("FMLA") to receive medical treatment.  **(SMF ¶3)** Cervenec returned to work at Borden as a Route Supervisor in August 2010. **(SMF ¶4)** On December 20, 2010, a Dr. Juan Mirabal issued Cervenec a federal Department of Transportation ("DOT") Medical Certificate certifying that Cervenec was medically qualified to drive a commercial vehicle. **(SMF ¶12)**

Also in December 2010, Jennifer Schmidt ("Schmidt"), Safety Manager, and Sandra Cuyler ("Cuyler"), Human Resources Manager, were given responsibility for the Miami location where Cervenec worked.  After recognizing that the state of the records in the Safety Department required a thorough review, one of Schmidt's first tasks was to review the records of the Route Drivers and Route Supervisors to make certain that each had a valid and current DOT Medical Certificate. **(SMF ¶¶7-8)**

While reviewing Cervenec's records, Schmidt discovered that the Federal Motor Carrier Safety Administration ("FMCSA") Medical Examination Report for Cervenec dated December 20, 2010 – which is the medical examination that allows a doctor to issue a DOT Certificate – showed that Cervenec was taking the anti-seizure medication "Keppra." **(SMF ¶9)** The FMCSA is the governmental body that establishes the medical requirements and qualifications for obtaining a valid DOT Certificate. **(SMF ¶6)** According to the FMCSA, taking anti-seizure medication of any kind disqualifies an individual from driving a commercial vehicle and holding a valid CDL. **(SMF ¶¶10-11, 13-15)**.  Schmidt, therefore, recognized that Cervenec's DOT Certificate dated December 20, 2010, was issued in error, and brought this information to Cuyler, who in-turn sent it to Borden's Compliance Manager, Greg Jones ("Jones"), in Atlanta. **(SMF ¶17)**  Jones sent the information to outside counsel and instructed Cuyler to suspend

3

Cervenec, with pay, until the issue could be resolved. **(SMF ¶¶17-18)**  Cervenec was suspended by Borden with pay on January 6, 2011. (**Id.**)   Borden told Cervenec that he was being suspended for medical reasons.  (**Id.**)

In May 2011, Borden determined that, as part of a Reduction-in-Force ("RIF"), it would be eliminating two (2) Route Supervisor positions – one in Miami and one in Winter Haven. **(SMF ¶35)**  In August 2011, Borden determined that, in Miami, it would eliminate Cervenec's Route Supervisor position because Cervenec was unable to drive a commercial vehicle and perform all the essential functions of his position because he was taking the anti-seizure medication Keppra.  **(SMF ¶36)**

On August 22, 2011, Cuyler sent a letter to Cervenec informing him of the elimination of his position, and informing him that he would be terminated effective August 31, 2011, if he was not interested in the only open position at the Borden Miami location – a Tech III Mechanic. **(SMF ¶¶37-38)**  Cervenec admitted that he was not qualified for the Tech III Mechanic position. Accordingly, on August 31, 2011, Borden terminated Cervenec's employment after being on a paid suspension for nearly eight (8) months. **(SMF ¶40)**  To date, over four (4) years after his termination, Cervenec's former position **has never** been filled by Borden. **(SMF ¶41)**

Most critically, from the time Borden suspended Cervenec through the date of his termination, there were no available alternate positions in the Miami location for which Cervenec was qualified. In addition, Borden did not have light-duty positions in the Miami location. **(SMF ¶¶33-34)**  Therefore, in the absence of being able to perform the essential

functions of his job as a Route Supervisor, there were no accommodations or alternate positions available that would have allowed Cervenec to return to work. [5]

**B.**    **Summary of the Argument**

Based on the foregoing facts, Cervenec's Complaint should be dismissed in its entirety on summary judgment for the following reasons:

First, Cervenec's Failure to Accommodate claims under both the ADA and FCRA (Counts I and IV), should be dismissed because the undisputed facts establish that: (i) Cervenec was not disabled; (ii) Cervenec was medically unqualified to drive a commercial vehicle pursuant to FMCSA medical requirements; (iii) driving a commercial vehicle was an essential and indispensable function of the Route Supervisor position; and (iv) at all times during Cervenec's suspension through the date of his termination, Borden had no light-duty or available alternate positions in the Miami location for which Cervenec was qualified.  Accordingly, there were no accommodations that would have allowed Cervenec to perform the essential functions of his Route Supervisor position or alternate positions that Borden could have placed Cervenec in.

Second, Cervenec's Unlawful Retaliation claims under the ADA and FCRA (Counts II and V), should be dismissed because the undisputed facts establish that: (i) other than requesting an accommodation in February 2011, Cervenec never engaged in any protected conduct prior to his termination on August 31, 2011; (ii) there is no causal connection whatsoever between

---

[5] 2011 was a challenging period for Borden, with reorganizations and reductions-in-force taking place not only in Florida, but in its sister-companies, nationally.  As a result of the chaos inherent in that process, Borden admittedly did a very poor job of communicating with Cervenec while he was on paid-leave (the very fact that Borden kept Cervenec on paid-leave for eight months is emblematic of this fact).  However, none of Borden's poor communicative efforts changes any of the foregoing undisputed facts and it **does not** equate to intentional illegal discrimination. In fact, in her deposition Cuyler apologized to Cervenec for the poor communication. **(Ex. 4, SMF, p. 68:8-21)**

Cervenec requesting an accommodation six (6) months before his termination and his termination; and (iii) Cervenec testified that he has no facts to demonstrate that Borden's actions were in retaliation for his requesting an accommodation.

Third, Cervenec's Intentional Discrimination claims under the ADA and FCRA (Counts III and VI), should be dismissed because the undisputed facts establish that: (i) Cervenec is not a "qualified person with a disability" because he was unable to perform the essential functions of his job with or without a reasonable accommodation; and (ii) Cervenec testified that he has no facts to demonstrate that Borden's actions were intended to be discriminatory as opposed to a Borden's belief that Cervenec could not perform the essential functions of his job.

Finally, Cervenec cannot demonstrate that Borden's legitimate non-discriminatory reason for his termination – that he was unable to perform one of the essential functions of the Route Supervisor position and that there were no alternate positions available to place Cervenec in – was pretextual and a lie intended to conceal deliberate and intentional disability discrimination.

## II.   <u>Summary Judgment Standard</u>

Summary judgment is mandated if there is no genuine issue of material fact to be tried, and the moving party is entitled to judgment as a matter of law. *Kee v. Nat'l Reserve Life Ins. Co.,* 918 F.2d 1538, 1540 (11th Cir. 1990); *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990). Summary judgment is clearly appropriate in employment-discrimination cases. *Wilson v. B/E Aerospace Inc.,* 376 F.3d 1079, 1084 (11th Cir. 2004) (rejecting contention that summary judgment is disfavored in employment discrimination cases); *see, Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 844 (11th Cir. 2000); *Mendoza v. Borden Inc.,* 195 F.3d 1238, 1244 (11th Cir. 1999).

To survive summary judgment, the opposing party must designate specific record evidence sufficient to establish each element of his claim, such that a reasonable jury could find

in the party's favor. *Earley*, 907 F.2d at 1080. The opposing party may not rest upon its pleading allegations but must instead set forth specific facts showing there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); Kee, 918 F.2d at 1540. A factual dispute is "genuine" only if the record taken as a whole could lead a rational trier of fact to find for the opposing party. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997).

## III.   Argument

### A.   Borden is Entitled to Summary Judgment on Cervenec's "Failure to Accommodate" Claims in Counts I and IV.

To establish a prima facie case of discrimination based on the failure to accommodate, Cervenec must demonstrate that: (1) that he has a disability; (2) that he is a "qualified individual" such that he could perform the essential functions of his position as a Route Supervisor with or without accommodation; and (3) that he was discriminated against because of his disability. *Lucas v. W.W. Grainger, Inc.,* 257 F.3d 1249, 1255 (11th Cir.2001). Under the ADA, "[a]n employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide 'reasonable accommodations' for the disability-unless doing so would impose undue hardship on the employer." *Id.* (citing 42 U.S .C. § 12112(b)(5)(A). The individual bears the burden of identifying an accommodation and demonstrating that the accommodation is reasonable. *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1286 (11th Cir. 1997).[6]

---

[6] In certain instances, a failure to engage in the interactive process may constitute a failure to provide a reasonable accommodation. *Kvorjak v. Maine,* 259 F.3d 48, 52-53 (1st Cir.2001); *Jacques v. Clean-Up Group, Inc.,* 96 F.3d 506, 515 (1st Cir.1996). The failure to engage in the interactive process, however, may be harmless where it is clear that the employee cannot perform the essential duties of the job under any circumstances. *Kvorjak,* 259 F.3d at 53; *Soto-Ocasio v. Federal Express Corp.,* 150 F.3d 14, 19 (1st Cir.1998). *See also, e.g., Valdez v. McGill,* 462 Fed. Appx. 814, 819 (10th Cir.2012) (explaining that an employer's failure to engage in a sufficient interactive process aimed at identifying a reasonable accommodation does not itself form the basis of an ADA claim and that a plaintiff must also show that a reasonable accommodation was "possible") ("[A]n employer is not required to engage an employee in a futile interactive process where, as we have concluded was the case here, no reasonable accommodation was possible"); *Lowe v. Ind. Sch. Dist. No. 1 of Logan Cnty,* 363 Fed. Appx. 548, 551–52 (10th Cir.2010) (same); *Wilkerson v. Shinseki,* 606 F.3d 1256,

Here, Cervenec cannot establish the elements of a prima facie case of disability discrimination for failure to accommodate for three reasons:

### 1. Cervenec is Not Disabled

It is axiomatic that, although discrimination can be based on a perceived disability or having a record of disability, one must have an **actual** disability in order to be entitled to an accommodation.  In this case, Cervenec did not have a disability.  By his own admission, at the time he returned to work at Borden in August 2010 after successful brain surgery, he **was not** substantially limited in any life functions. **(SMF ¶4)**.  The mere fact that he was taking medication that rendered him unable to perform one essential function of his particular job did not make him "disabled," as a matter of law. Specifically, under the ADA, a physical impairment does not substantially limit the major life activity of working merely because it precludes the performance of one particular job. 29 C.F.R. § 1630.2(j)(3)(i). Instead, the impairment must significantly restrict "the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *See, Militano v. Ranstad Professionals US, LP,* 2015 WL 1636115 *17 (S.D. Fla. April 13, 2015) (citing *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1327 (11th Cir.1998)).

Because Cervenec was limited only in driving a commercial vehicle due to his use of Keppra, and, by his own admission, he was not disabled, he cannot be considered to have had a disability for purposes of an ADA accommodation.

---

1266 (10th Cir. 2010) ("although there was not a face-to-face meeting between the parties to discuss accommodations, [plaintiff] requested an accommodation that the [defendant] considered and denied. Based on the circumstances in this case, it was reasonable for the [defendant] to conclude that any further interactive process would be futile"); *see also Earl v. Mervyns, Inc.,* 207 F.3d 1361, 1367 (11th Cir. 2000) ("[W]here a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is *unimportant*.") (emphasis added); *Willis v. Conopco, Inc.,* 108 F.3d 282 (11th Cir. 1997) (holding same).

### 2.    *Cervenec is Not A Qualified Individual With a Disability*

The term "qualified individual" is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). When determining the essential functions of a position, "consideration must be given to the employer's judgment." *Lucas,* 257 F.3d at 1258.  Moreover, an employer is not obligated legally to eliminate an essential function of the job as an accommodation. *Id. at* 1255-56 ("An accommodation can qualify as 'reasonable' and thus be required by the ADA, ***only if*** it enables the employee to perform the essential functions of the job.  The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions."); *Williams v. Revco Discount Drug Centers, Inc*., 552 Fed. Appx. 919 (11th Cir. 2014) ("[A]n employer is not required to accommodate an employee in any manner in which that employee desires… Nor does the ADA require an employer to eliminate an essential function of an employee's job or reallocate job duties to change the essential functions of a job.")

Here, even if Cervenec was "disabled" – which he was not – Cervenec is still not a "qualified individual with a disability" because he was, at all times relevant to this matter, unable to perform the essential function of driving a commercial vehicle in his Route Supervisor position, with or without a reasonable accommodation. ***See, e.g.,*** *Smith v. United Parcel Service, Inc.,* 2006 WL 3327072 (N.D. Ga. July 10, 2006) (holding that persons with certain health conditions, such as drivers with medical history of epilepsy, current clinical diagnosis of epilepsy, **or who are taking anti-seizure medication**, are not qualified to drive DOT regulated vehicles); *Coleman v. Keystone Freight Corp.,* 142 Fed. Appx. 83 (plaintiff was not a qualified individual where he failed to meet DOT regulations regarding driving while taking certain

medications and failed to prove he could perform essential functions of driving with or without a reasonable accommodation).[7]   Because Cervenec cannot prove that he was able to perform all the essential functions of the Route Supervisor position with or without a reasonable accommodation, he cannot avoid summary judgment on his failure-to-accommodate claim. *See, Lucas*, 257 F.3d at 1258; *see also Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1302 (11th Cir. 2000) (holding that plaintiff was not a qualified individual protected by the ADA because he could not work the overtime his employer required); *see also, Anderson v. Embarq/Sprint*, 379 Fed. Appx. 924 at *2 (11th Cir. 2010) (plaintiff failed to demonstrate that he was a "qualified individual" under the ADA because he could not show that he could lift boxes above a certain weight, as articulated in his job description); *see also Earl*, 207 F.3d at 1367 (because plaintiff failed to prove that she could perform all essential functions of her job, she was not a "qualified" individual).[8]

---

[7] *See also Ward v. Skinner*, 943 F.2d 157 (1st Cir.1991) (plaintiff taking anti-convulsant medicine not otherwise qualified to drive commercial vehicles according to DOT regulations); *Hill v. Kansas City Area Transp. Authority*, 181 F.3d 891, 893-894 (8th Cir. 1999) (affirming district court's grant of summary judgment holding that plaintiff's hypertension medication impaired her ability to perform an essential job function of job and employer did not violate ADA by not accommodating the limitations of this disability).

[8] Although Borden's interactive process with Cervenec may appear minimal, under the circumstances Borden was not required to do more.  It is undisputed that Cervenec, through his attorney, requested that Borden permit him to not drive a commercial vehicle as an accommodation so that he could return to work as a Route Supervisor.  **(SMF ¶31)**.  It also cannot be disputed that Borden considered driving a commercial vehicle an indispensable and essential function of the Route Supervisor position. **(SMF ¶¶22-24, 28)**  In addition, the only credible record evidence in this case establishes that driving a commercial vehicle was, in practice, an indispensable function of the Route Supervisor position. **(SMF ¶¶24-25, 27-29)**  Finally, it cannot be disputed that there were no light-duty or alternative positions available that Borden could have placed Cervenec in between the date of his suspension through the date of his termination, eight (8) plus months later.[8] **(SMF ¶¶33-34)**  Therefore, it cannot be disputed that there were no accommodative alternatives available to Borden that would have allowed Cervenec to return to work, in any capacity, much less as a Route Supervisor.  As noted above, an employer's failure to engage in a sufficient interactive process aimed at identifying a reasonable accommodation does not itself form the basis of an ADA claim and that a plaintiff must also show that a reasonable accommodation was "possible." *See, e.g., Valdez v. McGill,* 462 Fed. Appx. 814, 819 (10th Cir. 2012).  Here, it cannot be disputed that no reasonable accommodation was available or owed to Cervenec.

**B.      Borden is Entitled to Summary Judgment on Cervenec's
Retaliation Claims in Counts II and IV.**

Retaliation claims are analyzed under the *McDonnell Douglas* paradigm.  To establish a prima facie case of unlawful retaliation, Cervenec must show: (1) that he engaged in statutorily "protected conduct;" (2) suffered an adverse employment action; and (3) that there is a causal link between the conduct and the action.  *Standard v. A.B.E.L. Servs. Inc.,* 161 F.3d 1318, 1328 (11th Cir. 1998); *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1287 (11th Cir. 1997).  Even if Cervenec can establish a prima facie case, summary judgment is mandated unless Cervenec proves by a preponderance of the evidence that Borden's non-retaliatory explanation for the adverse employment action is a pretext.  *Stewart*, 117 F.3d at 1287-88.

In this case, Borden is entitled to summary judgment on Cervenec's retaliation claims for the following reasons: first, Cevenec admitted that his only "protected conduct" was his requesting the accommodation of eliminating driving a commercial vehicle from his duties as a Route Supervisor. **(SMF, Ex. 2, pp. 103:13-104:16)**  That request was made on February 10, 2011, more than six (6) months before his employment was terminated by Borden. Here, without more, there can be no question that the six plus month period between Cervenec's request for an accommodation and his termination is too remote to create a causal connection.  *See, e.g, Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999) (holding that a three month period between protected activity and adverse employment action, standing alone, is insufficient to establish causality); *Hughes v. Derwinski*, 967 F.2d 1168, 1174 (7th Cir. 1992) (holding four month period between filing of EEOC Charge and issuance of disciplinary letter insufficient to establish causal link).

Second, Cervenec testified that he has no facts beyond his own subjective belief to show that Borden terminated his employment for retaliatory reasons. **(SMF ¶45)**

### C.    Borden is Entitled to Summary Judgment on Cervenec's Disability Discrimination Claims in Counts III and VI.

"The ADA makes it unlawful for an employer to discriminate against 'a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation,  job training, and other terms, conditions, and privileges of employment.'" *Rodriguez v. ConAgra Grocery Prods. Co.,* 436 F.3d 468, 476 (5th Cir.2006) (quoting 42 U.S.C. § 12112(a)); *see also Standard v. A.B.E.L Services, Inc.,* 161 F.3d 1318, 1327 (11th Cir. 1998).  To make out a prima facie case of employment discrimination under the ADA, Cervenec must establish that he is (i) disabled within its meaning, (ii) qualified to perform the essential functions of his job with or without reasonable accommodation, and (iii) that he suffered an adverse employment action in circumstances that give rise to an inference of unlawful discrimination based on disability. *Greenberg v. BellSouth Telecommunications, Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007); *Dropinski v. Douglas County, Neb.,* 298 F.3d 704, 706-07 (8th Cir.2002).

Here, Cervenec cannot establish a prima facie case of discrimination for his termination for two reasons.  First, even assuming Cervenec was disabled[9] – which he was not – Cervenec was not qualified to perform the essential functions of his job with or without a reasonable accommodation.

---

[9]There is no record evidence that Borden viewed Cervenec as disabled.  Moreover, an employer does not "regard an employee as disabled simply by reasonably relying on medical restrictions imposed on him by a treating physician or the law. *See, e.g., Lorenzen v. GKN Armstrong Wheels, Inc.,* 345 F.Supp.2d 977, 991 (N. D. Iowa 2004); *Wooten v. Farmland Foods,* 58 F.3d 382, 386 (8th Cir.1995); *Beason v. United Technologies Corp.,* 213 F. Supp.2d 103, 108 (D. Conn. 2002).  Additionally, in the Eleventh Circuit, for a plaintiff to prevail under the "regarded as" prong, he must demonstrate two things: "(1) that the perceived disability involves a major life activity; and (2) that the perceived disability is 'substantially limiting' and significant." *Id.* at 1360; *see also Hilburn v. Murata Electronics North America, Inc.,* 181 F.3d 1220, 1230 (11th Cir.1999) ("As with actual disabilities, a perceived impairment must be believed to substantially limit a major life activity of the individual.").

Second,  Cervenec did not suffer an adverse employment action in circumstances that give rise to an inference of unlawful discrimination based on disability.  There are numerous reasons why this is true.  First, it cannot be disputed that Cervenec was medically unqualified to perform the essential function of driving a commercial vehicle as a Route Supervisor.  Second, Cervenec's former Route Supervisor position has never been filled by Borden in the four (4) plus years since his termination.  Third, there is no evidence that Borden ever allowed a Route Supervisor to remain on the job when Borden believed that the Route Supervisor was medically unqualified for any reason to drive a commercial vehicle. **(SMF ¶42).**  Fourth, Cervenec's position was eliminated in a Company-wide RIF. Finally, Cervenec testified that he had no facts – other than his own suspicion– to show that Borden made its decision to terminate his employment based on a desire to discriminate against him based on disability. **(SMF ¶¶42-45)**

      **D.**       **Even if Cervenec Could Establish a Prima Facie Case of Disability Discrimination and/or Retaliation –Which He Cannot – Cervenec  Still Cannot Prove that Borden's Legitimate Reasons For its Actions Were Pretexts For Discrimination.**

Even if Cervenec could establish a prima facie case of retaliation or disability discrimination – which he cannot – summary judgment would still be mandated here unless Cervenec can produce evidence sufficient to allow a reasonable inference that Borden's non-retaliatory explanation for his suspension and discharge were a pretext.  *Stewart*, 117 F.3d at 1287-88; *see also, Combs v. Plantation Patterns*, 106 F.3d 1519, 1534-35 (11th Cir. 1997) (summary judgment proper if employee fails to make pretext showing).

Here, Borden has offered legitimate non-discriminatory reasons for each of the employment actions that Cervenec now complains of; to wit, Cervenec was suspended and later terminated because he was unable to perform the essential functions of his Route Supervisor job, and there were no alternate employment opportunities available.  Once Borden offers evidence

of a legitimate non-discriminatory or non-retaliatory reason for the employment action, in order to defeat summary judgment, Cervenec must present "concrete evidence in the form of specific facts" demonstrating that Borden's  reason is only a mere pretext to discrimination. *Davis v. AT & T,* 846 F.Supp. 967, 969 (M.D. Fla. 1993).  Cervenec cannot simply "rely on the possibility that the jury might infer a discriminatory motive." *Id.* The Eleventh Circuit has held that "[i]n an employment discrimination case, the plaintiff *must produce sufficient evidence* to support an inference that the defendant-employer based its employment decision on an illegal criterion." *Benson v. Tocco, Inc.,* 113 F.3d 1203, 1207 (11th Cir.1997)(emphasis supplied) (citations omitted). Therefore, "[t]he relevant inquiry regarding summary judgment is whether a reasonable person could infer discrimination *based on the facts presented,* assuming those facts were to remain unrebutted. *See id.* As a result, an employment-discrimination plaintiff is entitled to prevail on summary judgment only when the evidence is sufficient to show that there is a genuine issue of fact regarding the truth of every reason proffered by the employer for its alleged discriminatory actions." *Biggs v. State of Florida Board of Regents,* 1998 WL 1069456, *4 (M.D. Fla. Oct. 28, 1998) (citing *Combs v. Plantation Patterns,* 106 F.3d 1519, 1529 (11th Cir.1997). "The plaintiff therefore must establish a prima facie case and present evidence sufficient "to allow a fact finder to disbelieve an employer's proffered explanation." *Id*. (citing *Combs,* 106 F.3d at 1532.); *see also*, *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997) (holding that in order to survive summary judgment, plaintiff must point to competent evidence showing that the employer's explanations are false.)

Accordingly, in evaluating whether a plaintiff has produced sufficient circumstantial evidence of pretext, the critical question is whether the plaintiff has demonstrated sufficient "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the

employer's explanation that a reasonable fact-finder could find the explanation was a lie. *Cooper v. Southern, Co.,* 390 F.3d 695, 725 (11th Cir. 2004); *see Damon v. Fleming Supermarkets of Fla. Inc.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999) (pretext inquiry focuses on whether employer gave "an honest explanation" of its behavior).

Here, the record contains no evidence whatsoever of shifting explanations for Borden's actions, statements inconsistent with Borden's explanation, or any other evidence that makes Borden's simple and clear explanation for its actions incoherent, contradictory or otherwise suspect. Borden has maintained from the start that driving a commercial vehicle is an essential function of the Route Supervisor position and that Cervenec could not drive a commercial vehicle due to his use of Keppra.[10] Importantly, a federal court should not sit as a "super personnel department that will second-guess an employer's decisions*." Elrod v. Sears, Roebuck & Co*., 939 F.2d 1466, 1470 (11th Cir. 1991). The Eleventh Circuit has noted a court should not second-guess an employer's business decisions "as long as those decisions were not made with a discriminatory motive." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1254, 1266 (11th Cir. 2010). *See also Wilson,* 376 F.3d at 1092 (plaintiff must show the defendant's employment decisions were motivated by discrimination; the role of the Court is … not to act as a super personnel department that second-guesses employers' business judgments).

In sum, there is nothing in the record to suggest, let alone reasonably prove, that Borden's stated reasons for its employment actions with respect to Cervenec are unworthy of belief. Based on the foregoing, the only question is whether the record evidence – or, in this case, the lack thereof – presented by Cervenec is enough evidence of discrimination and/or

---

[10] *Compare, e.g., Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1090-91 (11th Cir. 2004) (female who was passed over for promotion on grounds of being "less qualified" produced sufficient evidence of pretext by showing that manager who made promotion decision previously told others that she was, in fact, the "most-qualified" candidate).

retaliation that a reasonable—repeat, *reasonable*—jury could find that Borden  was motivated by illegal discrimination and/or retaliation.  Given the record evidence in this case, that conclusion is not only unreasonable, it is incomprehensible because it flies in the face of all the evidence.  In the absence of such evidence, summary judgment on this claim is mandated.  *Holifield*, 115 F.3d at 1565.  As such, Borden is entitled to summary judgment even if the Court concludes that Cervenec has identified evidence sufficient to establish a prima facie case of discrimination based on a record of having a disability and/or retaliation.

**E.**      **Cervenec's Red Herrings**

In his response to this Motion, Borden anticipates that Cervenec will highlight the following facts in an attempt to avoid summary judgment.  These "facts," however, are nothing but red herrings, which do not create genuine issues of material fact.

*1.*   *William Davis and Anton Zuffa Did Not Have Current DOT Medical Certificates in 2010.*

During the course of discovery, it was learned that, in 2010, prior to the suspension of Cervenec, two Route Supervisors in the Miami location had expired DOT Medical Certificates.  Cervenec will likely argue that this somehow demonstrates that Borden did not consider driving a commercial vehicle an essential function of the Route Supervisor position.  This, however, is a false narrative.  The facts establish that, prior to Schmidt and Cuyler's assumption of Safety and Human Resources responsibility over the Miami location in December of 2010, the records for Route Drivers and Route Supervisors were in need of a thorough review.  **(SMF ¶7)** It is undisputed that one of Schmidt's first tasks upon assuming responsibility over Miami was to ensure that all Route Drivers and Route Supervisors had current DOT Medical Certificates, which was required by Borden. **(SMF ¶8)**  At some point shortly after Schmidt's arrival in Miami, Anton Zuffa ("Zuffa") – who had not had his DOT Medical Certificate updated in nearly

a decade – was forced immediately by Cuyler to bring his DOT Medical Certificate current, which he did on February 10, 2011.  **(Ex. 4, SMF pp. 58:19-59:11; Ex. 27, SMF p. 23:10-21)** It is critical to note that Zuffa merely had an expired DOT Medical Certificate and was not medically disqualified from driving a commercial vehicle.

William Davis was hired as a Route Supervisor on May 12, 2010.  Davis was without a DOT Medical Card for only two (2) months while he worked in this role – from July 29, 2010 to September 24, 2010 – which predated Cuyler and Schmidt's assumption of responsibility over the Miami location. **(Ex. 1, SMF, ¶5)**

The only thing that Zuffa's pre-February 2011 expired DOT Medical Certificate, and Davis' two-month lapse actually establish is that the Miami location *prior* Safety Manager failed to catch and/or correct these deficiencies.

### 2. *Cervenec Was Not Offered a Severance Package When His Position Was Eliminated in August 2011.*

It is undisputed that Cervenec was not offered a severance package when his position was eliminated in August 2011.  Once again, Cervenec will likely argue that this is somehow evidence of Borden's disparate treatment of him because other persons whose positions were eliminated in the 2011 reduction-in-force were given severance packages.   Although, in the six (6) depositions taken by Plaintiff in the case, no one remembered if or why Cervenec was not offered a severance package, the simple undisputed facts establish that Cervenec **was not** similarly-situated to any of the Borden employees who did receive severance packages in the 2011 reduction-in-force.  Specifically, all the employees – other than Cervenec – who had their jobs eliminated in 2011 were actively employed by Borden and performing in their jobs at the time of their respective job eliminations.  **(Ex. 4, SMF pp. 67:8-15, 70:8-12)** Cervenec, by contrast, had been medically-unqualified to perform his job for more than a year (he returned to

work after surgery in August 2010 while taking Keppra) and had not been performing in his job for Borden for eight (8) months following his suspension.  Moreover, despite being medically-unqualified to perform his job, Cervenec had been on a full-paid suspension for eight (8) months.

### 3. *The Retail Merchandiser Position Was Not Available As an Alternate Position.*

In his Complaint, Cervenec alleges that Borden deliberately misled him about available alternate positions at the Miami location.  **(Compl. at ¶1)**  In his deposition, Cervenec testified that the concealed "position" he was referring to in his Complaint was the Retail Merchandiser position.  **(Ex. 2 to SMF, pp. 97:21-99:2)**  However, as Cervenec conceded in his deposition, there is no record evidence that shows that that position was open prior to Cuyler's August 22, 2011, letter to Cervenec. **(Ex. 2 to SMF, pp. 98:24-99:2)**  In fact, Cervenec was informed via email from CareerBuilder.com of the open position on August 28, 2011. **(SMF ¶39).**  Moreover, it is undisputed that Borden put the position on hold, and it was not filled until two years later in 2013. **(SMF ¶39)**

### 4. *The August 22, 2011, Letter to Cervenec References Open "Positions."*

On August 22, 2011, Cuyler sent a letter to Cervenec informing him that his job had been eliminated and that his employment would be terminated effective August 31, 2011.  Cuyler informed Cervenec in the letter that the termination would be effective unless he was interested in one of the "positions" in the Miami location for which she had attached job "descriptions." **(SMF ¶37)**  In fact, when sending the letter out to Cervenec, Borden had failed to enclose any job descriptions for Cervenec to review.  When Cervenec contacted Cuyler two days later to advise her of this fact, Cuyler sent Cervenec a job description for a Tech III Mechanic position, for which Cervenec was admittedly not qualified. **(SMF ¶¶37-38)** Cuyler informed Cervenec

that the Tech III Mechanic position was the only position open in the Miami location. **(SMF ¶37)**

In Cuyler's deposition, Cervenec seized on Cuyler's use of the words "positions" and "descriptions" to suggest that this was evidence of Borden's intentional withholding of available positions from Cervenec.  The undisputed facts establish the opposite.  As Cuyler testified, the August 22 letter was written not by her, but by outside counsel; and that she had failed to notice the mistake prior to sending the letter to her assistant to send out to Cervenec.  **(Ex. 3, SMF, pp. 110:24-112:23, 131:17-20; Ex. 4, p.61:9-20)**  Moreover, the only testimony and documentary evidence in this case establishes that there were no positions other than the Tech III Mechanic available on August 22, 2011. **(SMF ¶¶34, 39)**

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Borden requests respectfully that the Court should grant it summary judgment on each of Cervenec's six Counts in the Complaint.

Dated: November 13, 2015

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
    SMOAK & STEWART, P.C.
701 Brickell Avenue, Suite 1600
Miami, Florida 33131
Telephone:  305.374.0506
Facsimile:   305.374.0456


*/s/ Michael R. Tricarico*
Michael R. Tricarico
  Florida Bar Number 0937071
  michael.tricarico@ogletreedeakins.com
Kelly M. Peña
  Florida Bar No. 106575
  kelly.pena@ogletreedeakins.com

*Counsel for Defendant,*
  *Borden Dairy Company of Florida, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 13, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Michael R. Tricarico*
Michael R. Tricarico

## <u>SERVICE LIST</u>

*RYAN CERVENEC v. BORDEN DAIRY COMPANY OF FLORIDA LLC*
*United States District Court for the Southern District of Florida*
CASE NO.: 14-62876-CIV-COHN-SELTZER

Brian M. McPherson, Esq.
  bmpherson@gunster.com
  eservice@gunster.com
Roger W. Feicht, Esq.
  rfeicht@gunster.com
  eservice@gunster.com
GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive
Philips Point, Suite 500 East
West Palm Beach, FL 33401
Telephone: 561.655.1980
Facsimile:  561.655.5677

*Attorney for Plaintiff, Ryan Cervenec*

Method of Service: *CM/ECF*

Michael R. Tricarico
  Florida Bar Number 0937071
  michael.tricarico@ogletreedeakins.com
Kelly M. Pena
  Florida Bar No. 106575
  kelly.pena@ogletreedeakins.com
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
701 Brickell Avenue, Suite 1600
Miami, Florida 33131-2813
Telephone: 305.374.0506
Facsimile:  305.374.0456

*Attorneys for Defendant, Borden Dairy Company of Florida, LLC*